Neil F. DAVIS, Appellant,

v.

Elvis J. STAHR, Jr., Secretary of the Army of the United States, and individually, Appellee.

No. 15992.

United States Court of Appeals District of Columbia Circuit.

Submitted Feb. 14, 1961.

Decided June 15, 1961.

Petition for Rehearing Denied August 1, 1961.

Mr. Neil F. Davis, appellant pro se, submitted on the brief.

Messrs. Kevin T. Maroney and Samuel L. Strother, Attys., Dept. of Justice, submitted on the brief for appellee.

Before Mr. Justice REED, retired,* WILBUR K. MILLER, Chief Judge, and WASHINGTON, Circuit Judge.

WASHINGTON, Circuit Judge.

This case, like Bland v. Connally, (1961) 110 U.S.App.D.C. 375, 293 F.2d 852, involves a discharge, less than honorable in form, issued to an inactive reservist after charges of subversive activity.

In 1950, appellant Davis was inducted into the United States Army as a draftee. Two years later he was honorably separated from active duty and transferred to the Ready Reserve of the Army. Although under the terms of his separation appellant remained subject to recall to active service for defined periods and under specified conditions, 10 U.S.C. §§

* Sitting by designation pursuant to Section 294(a), Title 28, U.S.Code.

268, 672, 673, no order for his recall was ever issued, and in fact appellant has not participated in any sort of military activity since 1952.[1] Appellant has never been ordered to attend, or attended, any weekly evening drills or summer encampments.

In 1956, the military authorities sent Davis a letter setting forth certain derogatory information concerning his activities and associations, and advising him that failure or refusal to respond and refute the charges made against him, either in writing or in person, might be deemed an admission of their truth. Such an admission, he was told, might be made the basis of an "undesirable" discharge. A sample letter, agreeing to accept an "undesirable" discharge, was attached for appellant's use.[2]

Appellant replied by demanding a hearing before a Field Board of Inquiry, with confrontation of any and all persons whose testimony or statements might be used against him. Such a board .was thereupon convened. The Government presented no witnesses at the hearing, but offered Davis an opportunity to take the stand in his own behalf and offer any other evidence he might wish. He declined this offer. Some months later, Davis was issued an undesirable discharge. He then applied to the Army Discharge Review Board for an honorable discharge. The Board refused this relief, but did conclude that Davis should be given a second-class discharge ("general under honorable conditions"). Davis then applied to the Army Board for Correction of Military Records. While this application was pending, the Department of the Army notified Davis that his case was to be reconsidered by reason of the decision of the Supreme Court in Harmon v. Brucker, 1958, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503.

Later, the Department advised Davis that this reconsideration had been completed, and that no change would be made in the form of discharge. Several months later, the Army Board for Correction of Military Records advised Davis that his application for an honorable discharge had been denied. Davis then brought suit against the Secretary of the Army in the United States District Court for the District of Columbia. After answer, motions were made by both parties for summary judgment. The Government's motion was granted, and Davis appealed (our No. 15,347). This court remanded the case to the District Court, after concluding that there was present a genuine issue of material fact, rendering summary judgment improper. We pointed to the absence of administrative findings in the record before us, and said: "It certainly is not clear to us that appellee acted solely on the basis of appellant's military record, and not on his pre-induction conduct." Davis v. Brucker, 1960, 107 U.S.App.D.C. 152, 275 F.2d 181, 182.

The District Court thereupon ordered appellee to furnish supporting findings and affidavits, and in response to this, the findings of the Field Board, together with an affidavit of the Chairman of .the Army Board for Correction of Military Records, and certain other documents, were made a part of the record. The affidavit, prepared subsequent to our order of remand, recited that "the activities and conduct engaged in by Mr. Davis prior to his induction into the Army did not constitute any basis for the board's action in arriving at a final determination on Mr. Davis' application." Presumably this recital was designed to fulfill the requirements of Harmon v. Brucker, supra, which had been decided some months prior to the action of the Board in October, 1958, and which held, on

---

1. Appellant's reserve obligations included the duty to report changes of address, to submit to periodic physical examinations and report upon his physical condition, 10 U.S.C. § 1004, and to secure the approval of the Secretary of the Army should he wish to take a job with a for-

eign government or a concern controlled by a foreign government, 10 U.S.C. § 1032.

2. Appellant did submit in writing an offer to resign from the reserve should an honorable discharge be issued to him.

statutory grounds, that a second-class discharge could not be given on the basis of pre-induction conduct. The District Court, on consideration of the supplemented record, granted the Government's renewed motion for summary judgment. This appeal followed.

The case at bar is significantly different from Bland v. Connally. Bland's derogatory discharge was premised exclusively upon allegedly subversive contacts and associations made and maintained while Bland was in the inactive reserve. The present record is devoid of any allegations concerning subversive contacts and associations at any time subsequent to induction; there is no allegation that Davis had such associations while on active duty in the Army or while in the inactive reserve.[3]

The Field Board findings, which are the only findings before us, relate to three kinds of activity: (1) pre-induction con-

tacts and associations,[4] which, in view of the affidavit described above, we must assume were wholly excluded from consideration, (2) the failure to disclose such pre-induction contacts in filling out Form DD 398 (Statement of Personal History) on two occasions, once while on active duty and once while in the inactive reserve; the insertion of the word "none" in response to a question concerning possible subversive associations on an undated Loyalty Oath (Form DD 98); and the refusal to answer questions, at an interview after his honorable separation from active duty, relating to his pre-induction associations and to subversive statements he allegedly made while on active duty; and (3) the making of derogatory statements about the United States Government and the United States Army while on active duty.[5]

If the affidavit of the Chairman of the Army Board for Correction of Military

---

3. Another difference between the two cases is that 10 U.S.C. § 1163(c) (1), discussed in Bland, and requiring "approved findings of a board of officers" before a third-class discharge can be issued, is not applicable to a second-class discharge such as that issued to Davis. For a description of the several types of military discharge, see the opinion in Bland at footnote 1.

4. Allegation 2a of the Field Board findings recites:
   "In 1947, Corporal Davis was a functionary of the American Youth for Democracy. The confidential government file on this case contains information from investigative agencies in the Los Angeles area showing that Corporal Davis was a member of the American Youth for Democracy. Inasmuch as this information, disclosed in Tab C and Tab AA of the file, was received from confidential sources of known reliability and as no attempt to refute the allegation of membership was made by either Corporal Davis or his counsel, the board was obligated to make this finding."

5. The relevant findings as to this last charge are:
   "Corporal Davis did, while on active duty in 1952, express opinions concerning the objectives of the United States Army and principles of the United States. Evidence in the confidential file, Tab T and Tab S, indicates that Corporal Da-

vis, while on active duty with the 6th AAA Group, Fort Bliss, Texas, was re-restricted to nonsensitive duties and made derogatory statements concerning the United States Government and the Army of the United States, in that he stated:
   "I. He did not believe that our Government was a true representation of the working class.
   "II. Participation in the Korean war on our part was unjustified.
   "III. That we should have a socialistic form of government, which is the only true democracy.
   "IV. The only complete solution being control of the welfare of individuals by the government.
   "V. That you have to be an officer to vote the way you want while in the service.
   "VI. That the governments of Western Europe are actually under our domination and that those people are not our friends as we think, but know that we have and will exploit them.
   "VII. That we are not as self sufficient as the Soviet Union.
   "VIII. There are enough Communists in the United States to take over control of our Goverment, should the United States and Russia become engaged in war.
   "IX. That the United States would progress better under a Communist regime."

Records is to be given credence, the pre-induction conduct itself must be deemed to have been stricken from consideration. With the substantive pre-induction conduct removed from the case, the Board would hardly be entitled to consider, as an independent ground, the failure to disclose such conduct. This would allow the prohibition of Harmon v. Brucker to be circumvented by indirection. In fact, in Harmon itself, the petitioner had also refused to answer certain questions, propounded to him during an official interrogation held while he was on active duty, relating to his pre-induction associations. There is no suggestion in Harmon that the failure to respond would have been a sustainable independent ground for derogatory discharge, and there is good reason to conclude that it would not be so here. The regulation, AR 604–10, Par. 13(b)6, provides that "failing or refusing to answer any *pertinent* question propounded in the course of an official investigation, interrogation, or examination" shall be considered in making a determination. (Emphasis supplied.) But there is no administrative provision permitting consideration of failure to disclose irrelevant matters. Since pre-induction conduct is irrelevant to the character of discharge which the Secretary may issue, compliance with proper administrative standards would require that the Army Board for Correction of Military Records not base its action upon appellant's failure to reveal his pre-induction contacts and associations.

With these matters removed from consideration, as we believe they must be, all that remains to support the Board's determination is the allegation that appellant made derogatory remarks about the United States Army and Government while he was on active duty, and that he failed to discuss these remarks when questioned about them during an interrogation held after his transfer to the inactive reserve. This ground does not appear to us to be a proper one

on which to base a discharge from the inactive reserve, at least without permitting Davis to confront his accusers. We do not doubt that the Army has authority to suppress and punish mutinous talk on the part of soldiers on active duty. The question before us is whether the Congress has authorized the Secretary of the Army to put appellant on trial and to punish him for such conduct in the manner disclosed by the record before us. Had appellant been tried by a court martial convened under the Uniform Code of Military Justice, as presumably he might have been tried while on active duty if the offense had been deemed sufficiently serious,[6] he would have had the statutory right to compel the witnesses against him to appear and testify in a proceeding in which the burden of establishing his guilt beyond a reasonable doubt would have been upon the Government. 10 U.S.C. §§ 846, 851(c) (4). See Sanford v. Callan, 5 Cir., 148 F.2d 376, certiorari dismissed 1945, 326 U.S. 679, 66 S.Ct. 6, 90 L.Ed. 397. Here the appellant was honorably separated from active duty on September 28, 1952. More than three years later, on May 4, 1956, the Army first made its charges against him, including the charge that in September of 1955 he had refused to answer questions concerning "alleged previous expressions of opinion." He asked for confrontation, and was refused it.

In a case such as this, where the denial of the right of confrontation can be so prejudicial, we think any cancellation of the right must come from Congress and must be explicit. It is, moreover, far from certain that the allegations about appellant's statements are constitutionally sufficient to warrant the punishment he received, under the "clear and present danger" test. To be sure, this is not a question which we need here decide, but the presence of such doubts amply demonstrates the danger of assuming congressional authorization where Congress has not explicitly given its approval to the

---

6. We express no view on the question whether Davis is subject to court martial in his present status. Cf. United States

ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8.

**864**

challenged procedure. On the authority of *Greene v. McElroy*, 1959, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, and for the reasons given above and in our opinion in *Bland v. Connally*, we think we are bound to reverse. The judgment of the District Court will be reversed, and the case remanded for further proceedings not inconsistent with this opinion and, as to the relief to be granted, with our ruling in *Bland v. Connally*.

So ordered.