Dexter C. SHOULTZ, Plaintiff,

v.

Robert S. McNAMARA, Secretary of Defense, and Does One Through Ten, Defendants.

No. 47330.

United States District Court
N. D. California.

Feb. 9, 1968.

Marshall W. Krause, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION

PECKHAM, District Judge.

Plaintiff, a holder of a security clearance, employed by Lockheed Missiles and Space Company of Sunnyvale, California, seeks to enjoin the defendants, Secretary of Defense Robert S. McNamara and other Defense Department officials, from suspending plaintiff's secret security clearance pursuant to the provisions of Section V. B. of Department of Defense Directive 5220.6, effective January 6, 1967.[1] Both parties move for summary judgment and agree that there is no dispute as to the material facts. A minute order was entered on February 2, 1968, granting plaintiff's motion and denying defendants' motion.

The facts will not be fully repeated in this memorandum; instead, the Court adopts the statement of facts filed by defendants herein, augmented by the admitted allegations of the complaint and supplement to complaint filed herein, and such facts as do not appear in this memorandum are incorporated by this reference.

Plaintiff has been employed by Lockheed Aircraft Corporation and its subsidiary, Lockheed Missiles and Space Company, since 1960. Since June of 1966, he has been employed in the capacity of a computer programmer. Since 1956, with a brief exception not material here, plaintiff has held a security clearance at the access level of "Secret".

On or about October 13, 1967, plaintiff's security clearance was "suspended" under Section V. B. of Department of Defense Directive 5220.6 (hereinafter cited as Section V. B.). Further proceedings with respect thereto were discontinued because of plaintiff's earlier refusal to answer questions which he felt were irrelevant, immaterial or incompetent, or all of these, at a Defense Department interview held on June 30, 1967, in San Francisco, California. Almost immediately thereafter, plaintiff was informed by his employer that solely because of the suspension of his clearance he could no longer be employed by Lockheed but would be placed on "prolonged leave of absence" without pay until such time as his clearance status was settled.

On November 16, 1967, this Court issued a Temporary Restraining Order enjoining defendants from continuing the suspension of plaintiff's security clearance under Section V. B.; and at the hearing on the application for the Restraining Order and on subsequent occasions, the parties consented to extensions of the Restraining Order until February 4, 1968.

The crux of this case is the validity of Section V. B. and the procedures contained therein under which plaintiff's security clearance was to be suspended. First, plaintiff asserts that this Section is invalid because it is not expressly authorized by Congress or the President. Secondly, plaintiff asserts that if Section V. B. is authorized, it deprives plaintiff of a security clearance without Due Process of law.

---

1. "In the course of an investigation, interrogation, examination, or hearing, the applicant may be requested to answer relevant questions, or to authorize others to release relevant information about himself. The applicant is expected to give full, frank, and truthful answers to such questions, and to authorize others to furnish relevant information. The applicant may elect on constitutional or other grounds not to comply. However, such a wilful failure or refusal to furnish or to authorize the furnishing of relevant and material information may prevent the Department of Defense from reaching the affirmative finding required by reference (a) in which event any security clearance then in effect shall be suspended by the Assistant Secretary of Defense (Administration), or his designee, and the further processing of his case discontinued." Section V. B. of Department of Defense Directive 5220.6.

Plaintiff relies on Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), in support of his argument that Section V. B. is invalid for lack of specific authorization. In Greene v. McElroy, supra, the Supreme Court defined the issue before it in that case as "whether the Department of Defense has been authorized to create an industrial security clearance program under which affected persons may lose their jobs and may be restrained in following their chosen professions on the basis of fact determinations concerning their fitness for clearance made in proceedings in which they are denied the traditional procedural safeguards of confrontation and cross-examination." (Id., at 493, 79 S.Ct., at 1412).

This Court believes that the teaching of Greene is that an agency of the federal government cannot, without affording the traditional forms of fair procedure, take administrative action which effectively deprives an individual of his means of livelihood on loyalty or security grounds unless, at the least, Congress (or the President, if he is the source of the power) has expressly authorized the lesser procedure. See Garrott v. United States, 340 F.2d 615, 618, 169 Ct.Cl. 186 (1965).

At the outset, defendants attempt to distinguish Greene by asserting that the suspension here is not a final revocation because plaintiff has it within his power to reopen the proceedings at any time he chooses to answer the questions which he declined to answer at his interview. Accordingly, defendants argue that Greene does not require specific authorization by the President or Congress for the Department of Defense to have included in Directive 5220.6 "normally accepted administrative practices" which permit suspension of a security clearance without a hearing and related procedural

rights when the suspension does not amount to a "final" revocation.

In formulating the Greene test, the Supreme Court stressed the effect on the individual's livelihood of the challenged administrative action. Greene v. McElroy, supra, 360 U.S. at 500, 502, 506–507, 508, 79 S.Ct. 1400; Garrott v. United States, 340 F.2d 615, 619, 169 Ct.Cl. 186 (1965). Here, it is undisputed that under Section V. B., once a security clearance has been suspended, there is no further administrative or judicial remedy to challenge the suspension. Further processing of the case is discontinued. Defendants argue that the suspension remains in effect and further processing is discontinued only for as long as plaintiff refuses to answer the propounded questions. The Court is of the opinion, however, that this remedy is illusory. In effect, it requires plaintiff to submit to procedures which he believes are unauthorized and unconstitutional, thus rendering moot his objections to the procedures, in order to obtain a hearing with the procedural safeguards of Sections 3, 4 and 5 of Executive Order 10865.[2] In these circumstances, the Court believes that this "suspension" which has entailed a discontinuance of the processing of plaintiff's clearance, has the same final effect on plaintiff's livelihood that the Supreme Court was concerned about in Greene. Moreover, although plaintiff's employer was informed by the defendants that the suspension of plaintiff's security clearance was not intended to prevent utilization of plaintiff upon any nonclassified work that may be available to plaintiff, defendants admit that plaintiff was informed by authorized agents of Lockheed that solely because of the suspension of his clearance he could no longer be employed by Lockheed and that he would be placed on "prolonged leave of absence" without pay until such time as his clear-

2. Executive Order 10865 (25 Fed.Reg. 1583), entitled "Safeguarding Classified Information Within Industry", sets up comprehensive procedures to provide the "maximum possible safeguards" to pro-

tect the interests of a holder of a security clearance. It was issued in 1960 by President Eisenhower after Greene v. McElroy. It will be discussed in more detail elsewhere in this memorandum.

ance status was settled. In light of these facts, the Court feels that plaintiff has suffered a serious deprivation of his "right to hold specific private employment and to follow a chosen profession * * * [which come] * * * within the 'liberty' and 'property' concepts of the Fifth Amendment." Greene v. McElroy, supra, 360 U.S. 474, at 492, 79 S.Ct. 1400, at 1411. This Court is of the opinion that to hold otherwise would be honoring unduly the semantic difference between "final revocation" and "suspension", and would be disregarding the effect on plaintiff's livelihood so strongly emphasized in the *Greene* case.

The Court must next inquire whether the governmental action that was taken here deprived plaintiff of traditional forms of fair procedure which are associated with procedural Due Process. The salient facts can be briefly summarized. Plaintiff was notified that "the Screening Board [of the Department of Defense] has some *new information* that might affect * * * [his] * * * continued eligibility for a clearance", and that the Screening Board was going to "use this information to re-examine the status" of plaintiff's clearance.[3] It was indicated to plaintiff that this new information had been "developed by the investigation conducted in his case".[4] Plaintiff was requested to attend an interview at which he would be questioned about "matters germane to his [continued] eligibility for a security clearance." Plaintiff was also informed that, "[i]n particular, the Board desires that he be questioned in order to determine the extent of his participation in Cuban affairs."[5] No further notice of the purpose and scope of the inquiry was given to plaintiff, nor was he apprised of the nature of the "new information" possessed by the Screening Board which had

prompted the re-examination of his security clearance. Plaintiff was informed that he could be represented by counsel at the interview and that he would be afforded an opportunity to make a statement in his own behalf. His counsel was provided before the interview with a copy of Defense Department Directive 5220.6, including Section V. B., and plaintiff was informed that the provisions of Section V. B. would be applicable. Further, plaintiff was told that if he refused "to answer questions relevant to his continued eligibility for security clearance, his existing clearance will be suspended and further processing of his case will be discontinued."

At the outset of the interview on June 30, 1967, plaintiff stated his name, address and employer in response to questions propounded by the Department Counsel who was conducting the interview. Thereafter, he declined to answer all other questions on the grounds that they were irrelevant, incompetent or immaterial, or all of these. There was no hearing officer or other impartial person present at the interview to make rulings on these objections. After each objection, the Department Counsel proceeded to the next question.

By letter dated October 13, 1967, plaintiff was informed by the Department of Defense in pertinent part that:

"Having reviewed the transcript of that interview, the Screening Board has concluded that Mr. Shoultz's refusal to answer the questions addressed to him by Department Counsel denies the Board information it considers essential to a determination of his continued eligibility for security clearance. The conclusion by the Screening Board that the additional information is essential was based upon its evaluation of facts developed by

---

3. Letter to plaintiff's counsel dated March 14, 1967, from Solis Horwitz, Assistant Secretary of Defense (Administration) Exhibit B to the Complaint).

4. Letter to plaintiff's counsel dated April 14, 1967, from James E. Stauffer, Department Counsel (Department of De-

fense) (Exhibit A to Defendant's Statement of Material Facts).

5. Letter to plaintiff's counsel dated February 1, 1967, from William Scanlon, Director, Administrative Staff (Department of Defense) (Exhibit A to Complaint).

investigation. Without that information the Board is unable to reach the affirmative finding required by Section 2 of Executive Order 10865 dated February 20, 1960, i. e., that it is clearly consistent with the national interest to continue his clearance."

Almost immediately, plaintiff was notified by his employer that he would be terminated solely because of the suspension.

The Court is of the opinion that, as in *Greene*, there are serious constitutional problems inherent in the suspension procedure as outlined above which is sanctioned by Section V. B. In Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), the Supreme Court stated: "Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." (Id., at 442, 80 S.Ct., at 1515.) In that case, it was held that the rights to know the specific charges that are being investigated and the identity of the complainants, and the right to confrontation and cross-examination of the complainants and other witnesses were not constitutionally required at a Civil Rights Commission investigative hearing. The Court emphasized the "purely investigative nature of the Commission's proceedings" (Id., at 451, 80 S.Ct., at 1519) and distinguished between such a proceeding and one where the government agency involved is charged with making "determinations in the nature of adjudications affecting legal rights." (Ibid.) The Court stated that in contrast to this latter type of governmental action, as occurred in Greene v. McElroy, supra, "the Civil Rights Commission does not make any binding orders or issue 'clearances' or licenses having legal effect. Rather,

it investigates and reports leaving affirmative action, if there is to be any, to other governmental agencies where there must be action de novo." (Id., at 452, 80 S.Ct., at 1520.)

Closely viewed, the personal interview is neither a purely investigative nor an adjudicatory hearing. Because of the direct effects it can have, it is a hybrid proceeding. The investigating officer, called the Department Counsel, is not empowered to make any determinations affecting an individual's security clearance. Yet the suspension which was ordered here was clearly more than a collateral or incidental effect of the interview. It was expressly sanctioned by Section V. B. for refusal to answer relevant questions. Plaintiff's clearance was ordered to be suspended precisely as he had been forewarned. This action of the Screening Board under Section V. B. transforms the personal interview into something more than a purely investigative hearing. This two-stage process, like the governmental action in *Greene*, "were determining whether [plaintiff] could have a security clearance—a license in a real sense, and one that had a significant impact upon his employment." Hannah v. Larche, supra, 363 U.S. 420, at 452, 80 S.Ct. 1502, at 1520.

The lesser procedures sanctioned here by Section V. B. must be viewed in light of the drastic impact which they have on an individual's livelihood after a refusal to answer questions at a personal interview. The finality of this impact has heretofore been discussed. The only avenue available to plaintiff to reopen the proceedings is to submit to the lesser procedures provided by Section V. B. Finally, when viewing these procedures, the Court attaches significance to the fact that Defense Department Directive 5220.6 contains an alternative procedure of a Statement of Reasons and a full hearing which would more adequately protect plaintiff's procedural rights.[6]

6. Section VIII. Further, subsection 8 thereof provides for a summary procedure when the Secretary of Defense "determines personally that the provisions of this Directive cannot be invoked consistently with the national security."

Based on the foregoing analysis, the Court feels that Section V. B., in sanctioning the procedures which took place here, raises serious constitutional questions. In summation, Section V. B. permits an indefinite, if not effectively permanent, suspension of an individual's security clearance, thereby nullifying employment opportunity, without any statement of charges or other specific notice, without any opportunity to answer specific facts alleged to be jeopardizing an individual's security clearance, without any confrontation or cross-examination, and without any factual basis given as the reason for the suspension.

The Court is not dissuaded from the opinion by the defendant's argument that a suspension so long as there is a refusal to furnish relevant information is reasonable and procedurally proper. The instant case does not present the question whether the refusal on unprivileged grounds to answer questions in a properly convened hearing could serve as the basis for the type of suspension which was prescribed here. Defendants strenuously rely on Konigsberg v. State Bar, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961) and on In Re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961). The government action involved in each of those cases occurred after the refusal to answer questions by an applicant for admission to a state bar in the midst of a hearing fully consonant with procedural Due Process requirements. Also, it is significant that those administrative decisions were subject to judicial review.

Nor is the Court persuaded by the cases which defendants cite which stand for the proposition that an incomplete initial or renewal application entitles a governmental agency to discontinue processing the application.[7] In reaching this conclusion the Court is persuaded by the emphasis which the Supreme Court placed in *Greene* upon the right to be free from unreasonable governmental action by which "affected persons may *lose* their jobs and may be *restrained* in following their chose professions * * *." (Greene v. McElroy, supra, 360 U.S. 474, at 493, 79 S.Ct. 1400, at 1412, 3 L.Ed.2d 1377) (emphasis added).

Having exposed the serious constitutional problems in Section V. B., this Court must next inquire whether "the President or Congress, within their respective constitutional powers, specifically has decided that the imposed procedures are necessary and warranted and has authorized their use." (Id., at 507, 79 S.Ct., at 1419). Plaintiff asserts, and defendants do not contend otherwise, that Congress has never enacted an industrial security clearance program. Therefore, if Section V. B. is authorized, the authorization must specifically appear in an Executive Order issued by the President.

The defendants do not point to any Executive Order as specifically authorizing the procedures of Section V. B. In their Memorandum of Points and Authorities defendants argue that the authority and responsibility for the protection of official information affecting the national security is granted and delegated by Executive Order 10501, 18 Fed.Reg. 7049, 50 U.S.C. § 401 note. That Order, however, does not specifically authorize the procedure sanctioned by Section V. B. Defendants also discuss Executive Order 10865, 25 Fed.Reg. 1583, 50 U.S.C. § 401 note, as being relevant. Section 3 of that Order provides, "[e]xcept as provided in section 9 of this order", a security clearance may not be finally denied or revoked "unless the applicant has been given the following":

7. Borrow v. FCC, 109 U.S.App.D.C. 224, 285 F.2d 666 (1960), cert. denied, 364 U.S. 892, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960); Cronan v. FCC, 109 U.S.App. D.C. 208, 285 F.2d 288 (1960), cert. denied, 366 U.S. 904, 81 S.Ct. 1046, 6 L. Ed.2d 203 (1961); Blumenthal v. FCC, 115 U.S.App.D.C. 305, 318 F.2d 276 (1963), cert. denied, 373 U.S. 951, 83 S. Ct. 1679, 10 L.Ed.2d 706 (1963); Schneider v. Roland, 263 F.Supp. 496 (W.D.Wash.1967), rev'd. on other grounds, Schneider v. Smith, 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799.

(1) a comprehensive and detailed written statement of reasons; (2) an opportunity to reply in writing; (3) an opportunity to appear personally at a hearing; (4) a reasonable opportunity to prepare for the appearance; (5) to be represented by counsel; (6) an opportunity to confront and cross-examine his accusers (except, as provided in Section 4, when the head of the department declares that such disclosure "would be substantially harmful to the national interest"); and (7), a written notice of a final decision which contains findings as to each allegation in the statement of reasons. This section clearly does not authorize the procedure of Section V. B. and the Court feels that by inference Section V. B. is inconsistent with this Section of the Executive Order. Section 9 provides for a revocation or denial of a security clearance under lesser procedural protection "only when the head of a department determines that the procedures prescribed in sections 3, 4, and 5 cannot be invoked consistently with the national security". Defendants do not contend that this section has been complied with here or that it authorizes the procedure of Section V. B. Finally, Sections 1(a) and 2, the sections of Executive Order 10865 which generally restate the authority and responsibility of the executive department heads to protect classified information and issue appropriate regulations, do not constitute the specific authorization for Section V. B. which is required by Greene v. McElroy, supra. As defendants point to no other Executive Orders which might provide the requisite authorization, this Court concludes that Section V. B. is invalid as not being authorized. This ruling makes it unnecessary for this Court to decide the other ground advanced by plaintiff in support of his motion for summary judgment.

For the foregoing reasons, plaintiff's motion for summary judgment has been granted and defendants' cross-motion for summary judgment has been denied. Defendants and each of them, their agents and subordinates are permanently enjoined from suspending plaintiff's security clearance for classified materials described in the complaint in this action under the provisions of Section V. B. of Department of Defense Directive 5220.6, dated December 7, 1966. This Order does not prevent defendants from taking appropriate action to safeguard the national security under Section 9 of the Executive Order 10865 or any other authorized provisions of Directive 5220.6, if they be so advised.[8]

---

8. It is interesting to note that plaintiff was asked to attend an interview regarding his security clearance by the Defense Department at least as early as November 30, 1966. His clearance was not ordered to be suspended until on or about October 13, 1967.