Michael H. HOLLAND,
et al., Appellees,

v.

NATIONAL MINING ASSOCIATION,
et al., Appellees.

Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
Appellant.

Nos. 01-5069, 01-5070.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 3, 2002.

Decided Nov. 8, 2002.

Jeffrey Clair, Attorney, United States Department of Justice, argued the cause for federal appellant. With him on the briefs were Roscoe C. Howard, Jr., United States Attorney, and Douglas N. Letter, Litigation Counsel, United States Department of Justice.

John R. Woodrum argued the cause for appellants National Mining Association, et al. With him on the briefs was Margaret S. Lopez. William I. Althen entered an appearance.

Stephen J. Pollak argued the cause for appellees Holland, et al., and amicus curiae United Mine Workers of·America. With him on the briefs were John Townsend Rich, Howard R. Rubin, and Paul A. Green. Grant F. Crandall entered an appearance.

Before: EDWARDS and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701-9722, requires certain coal operators to pay annual premiums for retired coal miners' health benefits to the United Mine Workers of America Combined Benefit Fund ("Fund"). 26 U.S.C. § 9704(a). Under the Coal Act, the Commissioner of the Social Security Administration ("Commissioner") must calculate, according to a specified formula, the premiums that coal operators must pay. 26 U.S.C. § 9704(b)(2). Calculating the premiums requires the Commissioner to interpret the word "reimbursements" in § 9704(b)(2)(A)(i) of the Coal Act. In 1995, several coal companies filed suit in the District Court in the Northern District of Alabama and successfully challenged the Commissioner's interpretation of the word

"reimbursements." *See Nat'l Coal Ass'n v. Chater,* No. CV94-H-780-S, 1995 WL 1052240 (N.D.Ala. July 20, 1995). The Eleventh Circuit affirmed the District Court's judgment enjoining the Commissioner to recalculate the premiums according to an interpretation of "reimbursements" different from the one that the Commissioner had been using. *Nat'l Coal Ass'n v. Chater,* 81 F.3d 1077, 1082 (11th Cir.1996). The Commissioner recalculated the premiums according to the Eleventh Circuit's interpretation of "reimbursements" and then applied this revised interpretation and resulting premium recalculation nationwide, including with respect to coal operators who were not parties in the Eleventh Circuit litigation.

The instant case arose in 1996 when the appellees, the Trustees of the Fund, filed suit in the District Court challenging the Commissioner's nationwide implementation of the revised interpretation of the Coal Act. The Trustees alleged that the Commissioner violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), in applying § 9704(b)(2)(A) of the Coal Act in a manner "not in accordance with law." The District Court denied the appellants' motions to dismiss, *see Holland v. Apfel,* 23 F.Supp.2d 21, 29 (D.D.C.1998), and granted summary judgment in favor of the Trustees, *see Holland v. Apfel,* No. 96-01744, Mem. Op. (D.D.C. Feb. 25, 2000) ("Mem. Op."), *reprinted in* Joint Appendix ("J.A.") at 202, 214. The District Court ordered the Commissioner to recalculate the premium in accordance with the Commissioner's initial, pre-Eleventh Circuit interpretation of "reimbursements," but stayed its injunction pending appeals.

Appellant Commissioner contends that the agency's nationwide implementation of the revised interpretation of "reimbursements" in the Coal Act is in "ac-

cordance with law," because the interpretation was mandated by the Eleventh Circuit injunction. The Commissioner also claims that the District Court abused its discretion in granting injunctive relief, because the relief is inherently at odds with the judgment of the Eleventh Circuit. Intervenors/Appellants National Mining Association and various coal companies (collectively "NMA") contend that res judicata bars this suit. They also argue that this court should follow the Eleventh Circuit's interpretation of "reimbursements," because it comports with the plain meaning of the statute; alternatively, NMA claimed during oral argument that, if the statute is ambiguous, the agency's revised interpretation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Trustees, in turn, argue that the statute unambiguously supports the Commissioner's original interpretation of "reimbursements."

We hold that res judicata does not bar the Trustees' action in the D.C. Circuit. The Trustees were not a party in the litigation in the Eleventh Circuit, so they are not bound by that judgment. Nor does the Eleventh Circuit judgment purport to bind the Commissioner with respect to coal operators who were not party to that litigation. The Trustees' action in the D.C. Circuit can result in a viable remedy covering coal operators who were not covered by the injunctive relief granted in the Eleventh Circuit. Therefore, the Commissioner is not potentially subject to two conflicting orders as a result of the instant litigation.

We further hold that the agency's nationwide application of the Eleventh Circuit's interpretation of "reimbursements" is not insulated from APA review by virtue of having been undertaken in response to the Eleventh Circuit injunction. The Commissioner was not in fact bound to recalculate the premium for coal operators who were not party to the Eleventh Circuit litigation. There is thus no reason why we cannot review the agency's decision to apply the Eleventh Circuit's interpretation to coal operators who were not party to the litigation.

APA review in this case is ultimately a matter of statutory interpretation of the word "reimbursements." However, on the record that is now before the court, it is impossible to determine whether this case falls within the category of cases to which *Chevron* deference applies. In particular, it is unclear whether the agency, in applying the Eleventh Circuit's interpretation of the Coal Act, believed that it was compelled to implement the interpretation nationwide, or, rather, reasonably and voluntarily "acquiesced" in the interpretation. If the agency felt effectively "coerced" into adopting the interpretation nationwide, then the agency would not be entitled to deference under *Chevron*. Indeed, *Chevron* would not apply at all, because the adoption would not represent the agency's reasoned judgment on statutory meaning. But if the agency voluntarily acquiesced, choosing to implement the Eleventh Circuit's interpretation nationwide based on the agency's own reasoning about statutory meaning, then *Chevron* deference might be due. Since the answer to the question whether the agency acquiesced or was coerced is not clear from the record before us, we remand this case to the District Court with instructions to remand the case to the agency for clarification of the agency's position.

## I. BACKGROUND

### A. The Coal Act

In 1992, Congress enacted the Coal Act, 26 U.S.C. §§ 9701-9722, to ensure ade-

quate funding for the provision of health care benefits to retired coal miners. Previously, miners' health benefits had been provided through benefit plans established by collective bargaining agreements between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association, an association of coal industry employers. The Coal Act merged two such former benefit plans, the 1950 UMWA Benefit Plan and the 1974 UMWA Benefit Plan ("Plans"), into a new multi-employer plan called the UMWA Combined Benefit Fund ("Fund"), which is financed by annual premiums assessed against signatory coal operators. *See E. Enters. v. Apfel,* 524 U.S. 498, 514, 118 S.Ct. 2131, 2141-42, 141 L.Ed.2d 451 (1998) (citing 26 U.S.C. §§ 9702(a)(1), (2) and 26 U.S.C. §§ 9701(b)(1), (b)(3), (c)(1)). The Coal Act gives the Trustees of the Fund the authority to collect premiums, spend money for health care, and administer the Fund's benefit program. *See* 26 U.S.C. §§ 9702-9704.

One of the responsibilities that the Coal Act assigns the Commissioner is that of calculating the per-beneficiary premiums that coal companies are required to pay each year. *See* 26 U.S.C. § 9704(b). The Coal Act provides that the per-beneficiary premium for each plan year shall be equal to:

> (A) the amount determined by dividing—
>   (i) the aggregate amount of payments from the 1950 UMWA Benefit Plan and the 1974 UMWA Benefit Plan for health benefits (less reimbursements but including administrative costs) for the plan year beginning July 1, 1991, for all individuals covered under such plans for such plan year, by
>   (ii) the number of such individuals . . . .

26 U.S.C. § 9704(b)(2)(A). Under this detailed formula, signatory coal operators must pay to the Fund a per-beneficiary premium that equals the average cost to the Plans of providing health benefits during the "base year" beginning July 1, 1991, minus "reimbursements" by Medicare or other federal sources.

Prior to 1990, the Plans paid health care providers for services directly, and then sought reasonable cost-based reimbursement from the Health Care Financing Administration ("HCFA"), the agency within the Social Security Administration that administers Medicare. This arrangement of negotiating cost-based Medicare reimbursements led to longstanding disputes between HCFA and the Plans. In 1990, HCFA and the Plans thus entered a "risk capitation" agreement, under which HCFA agreed to pay the Plans a monthly flat fee (rather than the cost-based amount) to cover Medicare responsibilities, based on the Plans' projected expenditures. However, it turned out that the agreement set the flat fee higher than the Medicare-covered costs that the Plans actually incurred during 1991, the first year of the agreement: HCFA paid the Plans a flat fee of $182.3 million, and the Plans spent only $156.8 million for Medicare-covered services, resulting in an overpayment of $25.5 million for Medicare-covered services. HCFA and the Plans later renegotiated the capitation agreement to set a substantially lower flat fee for subsequent years.

The first year of the capitation agreement was also coincidentally the all-important base year to which the Coal Act refers in setting out the calculation formula. In calculating the premium amount that coal operators were required to pay to the Fund under the Coal Act, the Commissioner interpreted the term "reimbursements" in § 9704(b)(2)(A)(i) to mean the $156.8 million that the Plans actually incurred in Medicare-covered costs that year, rather than the $182.3 million that HCFA paid to the Plans under the capitation agreement.

The coal employers thus paid the Fund an amount based on the costs to the Fund of providing benefits for all services that year (*i.e.,* Medicare-covered and other services as well), minus the $156.8 million in Medicare "reimbursements" received from HCFA. In other words, the Commissioner assumed that the Fund could only be "reimbursed" in the amount actually spent for Medicare-covered services. The $25.5 excess may have been a temporary windfall to the Fund, but it was not viewed as a "reimbursement" for Medicare-covered service. If the Commissioner had instead interpreted "reimbursements" to mean the $182.3 million that HCFA paid to the Plans that year, then the coal employers would have paid the Fund $25.5 million less.

## B. The Eleventh Circuit Litigation

National Coal Association ("NCA"), a trade association, and eight coal companies brought suit under the APA in the United States District Court for the Northern District of Alabama, challenging the Commissioner's premium calculation and his interpretation of the term "reimbursements" in the Coal Act. *See Nat'l Coal Ass'n,* 1995 WL 1052240. The coal companies sought to enjoin the Commissioner to recalculate the initial and all subsequent annual premiums consistent with an interpretation of "reimbursements" that meant the entire amount that HCFA paid the Plans, rather than the portion that equaled the Plans' actual Medicare-covered costs. The Commissioner initially moved to dismiss the complaint for failure to join the Trustees of the Fund as a necessary party, but the court denied the motion. The court found that the Commissioner's interpretation of the statutory term "reimbursements" contradicted the plain meaning of the term, and enjoined the Commissioner to recalculate the premium by deducting from the Plans' health care costs the entire amount that HCFA

paid to the Plans. The Eleventh Circuit affirmed, agreeing that the Commissioner's interpretation was inconsistent with the plain meaning of the statute. *See Nat'l Coal Ass'n,* 81 F.3d at 1082. The Commissioner did not seek certiorari.

The Commissioner recalculated the premium to conform to the injunction and notified the Trustees of the recalculated amount, which was now reduced by 10%. Although the Eleventh Circuit's judgment did not technically bind the Commissioner with respect to coal companies who were not plaintiffs in the litigation, the Commissioner implemented the new interpretation nationwide.

## C. Proceedings Below

The Trustees of the Fund then filed the instant lawsuit in the United States District Court for the District of Columbia, claiming that the Commissioner's nationwide implementation of the revised interpretation of the statute violated the APA. Complaint for Declaratory and Injunctive Relief ¶ 29, *reprinted in* J.A. at 119, 129-30. The Trustees sought declaratory and injunctive relief that would order the Commissioner to adopt the initial premium calculation, which the Eleventh Circuit had invalidated. *Id., reprinted in* J.A. at 130-31. NMA, a successor to the trade association NCA, and several coal companies, who were plaintiffs in the Eleventh Circuit litigation, intervened as defendants.

The Commissioner and NMA moved to dismiss on grounds of res judicata, claiming that the Trustees were bound by the Eleventh Circuit litigation. *See Holland,* 23 F.Supp.2d at 23. They also argued that agency action that has been compelled by a court's injunctive order cannot violate the "not in accordance with law" standard of the APA § 706(2)(A), and thus is not subject to APA review. *See id.* at 26. The District Court rejected these argu-

ments, and also held that the doctrine of comity did not warrant deference by the District Court to the Eleventh Circuit's ruling. *See id.* at 23-29. Then, on cross-motions for summary judgment, the District Court granted summary judgment for the Trustees. Mem. Op. at 13, *reprinted in* J.A. at 214. It reasoned that the term "reimbursements" in the Coal Act was ambiguous under *Chevron* Step One. *Id.* at 8, *reprinted in* J.A. at 209. But under *Chevron* Step Two, the District Court held that, because the Commissioner's revised interpretation was the product of a compulsory injunction by the Eleventh Circuit rather than of reasoned analysis, the revised interpretation did not warrant deference. *Id.* at 11, *reprinted in* J.A. at 212. The District Court instead appeared to "defer" to the Commissioner's pre-injunction interpretation of "reimbursements," and issued a declaratory judgment adopting that interpretation. *See id.* at 11-12, *reprinted in* J.A. at 212-13. Although the District Court did not initially order any injunctive relief, it later amended its judgment and ordered the Commissioner to recalculate the premium in accordance with the District Court's interpretation of "reimbursements." Amended Order and Judgment, *reprinted in* J.A. at 235-37. It stayed the injunction pending appeals. *Id., reprinted in* J.A. at 237. The Commissioner and NMA now appeal.

## II. ANALYSIS

### A. Res Judicata

The first issue presented in this appeal is whether this case is barred by the doctrine of res judicata, which holds that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The Trustees of the Fund, who brought the instant case, challenge the agency's interpretation of the same provision of the Coal Act that was at issue in the Eleventh Circuit case. The Trustees were not party to the Eleventh Circuit litigation. The coal companies who brought suit in the Eleventh Circuit did not attempt to join the Trustees; and the Alabama District Court denied the Commissioner's motion to dismiss for failure to join the Trustees as a necessary party. "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are ... bound by a judgment or decree." *Martin v. Wilks,* 490 U.S. 755, 765, 109 S.Ct. 2180, 2182, 104 L.Ed.2d 835 (1989). Not having been a party in the Eleventh Circuit litigation, the Trustees cannot be bound by the judgment, and thus are entitled to bring their claim.

Appellant NMA relies on a footnote in *Wilks, id.* at 762 n. 2, 109 S.Ct. at 2184 n. 2, which recognizes "an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party," to argue that, although the Trustees were not a party to the prior litigation, they should be bound, because their interests were adequately represented by someone with the same interests, namely the Commissioner. This argument is unavailing. As the District Court noted, this case does not fit either of the *Wilks* footnote's two specified "limited circumstances" in which a nonparty may be adequately represented by a party to prior litigation: class or representative suits, or suits in which the nonparty exercised control of the litigation on behalf of a party. *See id.*

Moreover, as the District Court correctly reasoned, *see Holland,* 23 F.Supp.2d at 26, although the Trustees in this case ad-

vocate the same interpretation of "reimbursements" as did the Commissioner throughout the Eleventh Circuit litigation, the Trustees and the Commissioner do not share the same incentives. The Trustees of the Fund have a monetary incentive to adopt a statutory interpretation that will maximize the Fund's revenues, to pay for the health care needs of retired mine workers. The Commissioner, who has the responsibility of calculating the premium, must act impartially and does not have a monetary incentive to adopt a particular statutory interpretation. This disparity in incentives undermines NMA's claim that the Trustees were adequately represented by the Commissioner in the Eleventh Circuit. *See Cleveland County Ass'n for Gov't by the People v. Cleveland County Bd. of Comm'rs,* 142 F.3d 468, 474 (D.C.Cir.1998) (finding that diverging incentives prevented a party from adequately representing another party's interests). These disparate incentives are underscored by the fact that the Trustees are now suing the Commissioner in this case.

Furthermore, the Eleventh Circuit judgment did not purport to cover all coal companies; it covered only the coal companies who were plaintiffs in that case. The injunction bound the Commissioner only with respect to the calculation of premiums for the coal operators who were individually-named plaintiffs or members of NCA, the plaintiff trade association. Therefore, the instant suit by the Trustees challenging the agency's interpretation of the same provision that was at issue in the Eleventh Circuit is not a collateral attack on the prior judgment. Res judicata does not bar this suit.

The Trustees' action in the D.C. Circuit can result in a viable remedy in favor of the Trustees and against the Commissioner, with respect to the coal operators who are not covered by the Eleventh Circuit's injunction. Such an injunctive remedy in

the D.C. Circuit would not conflict with, or purport to overturn, the Eleventh Circuit's injunction. To the extent that the District Court was unclear or mistaken as to the scope of its injunction, we clarify that an injunction issued in the D.C. Circuit can bind the Commissioner only with respect to coal companies who were not already covered by the Eleventh Circuit's injunction. The instant case thus does not potentially subject the Commissioner to two conflicting orders, even if the two injunctions order opposing interpretations of "reimbursements." It is altogether possible for the Commissioner to calculate the premium twice, according to the two different interpretations of "reimbursements," and to apply the appropriate calculation to each coal operator, depending on whether the particular coal operator was or was not party to the Eleventh Circuit suit.

## B. APA Review

■■■ In a case like the instant one, in which the District Court reviewed an agency action under the APA, we review the administrative action directly, according no particular deference to the judgment of the District Court. *Troy Corp. v. Browner,* 120 F.3d 277, 281 (D.C.Cir.1997); *Gas Appliance Mfrs. Assoc., Inc. v. Dep't of Energy,* 998 F.2d 1041, 1045 (D.C.Cir. 1993). On an independent review of the record, we will uphold the agency action unless we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Appellant Commissioner contends that the interpretation of the Coal Act currently in force must necessarily be deemed "in accordance with law" under § 706(2)(A) of the APA, because that interpretation was compelled by a judicial decree; the Eleventh Circuit's injunction, the Commissioner claims, is "law" for the purpose of "not

in accordance with law" review. We may assume, *arguendo*, that this might have been true had this case simply involved the agency's interpretation of the Coal Act with respect to the coal companies who were party to the Eleventh Circuit litigation. But this case involves the agency's separate decision to apply the Eleventh Circuit's interpretation to coal companies who did not have the benefit of the prior judgment. The injunction did not technically require the premium recalculation for all coal companies. The Commissioner concedes as much. *See* Br. for Appellant Commissioner at 10, 33. In this case, the agency action at issue is the revised interpretation of "reimbursements" only as it affects those coal companies not covered by the Eleventh Circuit's injunction.

Allowing one circuit's statutory interpretation to foreclose APA review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review. In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Supreme Court rejected nonmutual collateral estoppel against the government in a case in which the government sought to litigate a constitutional issue that had been decided in a prior litigation against a different party. "A rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue[, which] would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *Id.* at 160, 104 S.Ct. at 572.

The Commissioner is correct that *Mendoza*'s principle of inter-circuit non-acquiescence does not authorize this court to lift the existing Eleventh Circuit injunction as to the coal companies who were parties in the prior litigation. Circuits may have differing interpretations of the same statutes, but their differing interpretations are developed in different cases, not in the same dispute. This case is not the same dispute as the one litigated in the Eleventh Circuit. Not only is there a different party seeking review, it is a review of a separate agency action regulating coal companies not party to the prior litigation. Review in this court under the APA thus does not disturb the finality of the prior judgment. It does, however, vindicate the authority of the circuits to rule on statutory meaning independently of each other.

## C. The Statutory Question

██ This case involves the construction of a statutory term implemented by a government agency with authority to administer the statute. At issue is the meaning of the word "reimbursements" in § 9704(b)(2)(A) of the Coal Act. In reviewing an agency's statutory interpretation under the APA's "not in accordance with law" standard, we adhere to the familiar two-step test of *Chevron*, provided that the conditions for such review are met. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S.Ct. 2164, 2170-71, 150 L.Ed.2d 292 (2001) (holding that *Chevron* deference is due only when the agency acts pursuant to "delegated authority" and the agency action has the "force of law"). Under *Chevron*, "if the intent of Congress is clear," this court "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43, 104 S.Ct. at 2781. If "Congress has not directly addressed the precise question at issue," and the agency has acted pursuant to an express or implied delegation of authority, the agency's statutory interpretation is entitled to deference, as long it is reasonable. *Id.* at 843-44, 104 S.Ct. at 2782.

In support of the Eleventh Circuit's holding that the plain meaning of "reimbursements" in § 9704(b)(2) refers to the entire amount that HCFA paid the Plans under the capitation agreement, rather than the amount that the Plans actually incurred in Medicare-related expenses, the court stated that "'[r]eimburse' is defined as 'to pay back (an equivalent for something taken, lost, or expended) to someone: repay.' *Webster's Third New International Dictionary* 1914 (1986). The ordinary meaning of the term 'reimbursement' is not restricted by any requirement that such payments be dollar-for-dollar what the reimbursed party payed out." *Nat'l Coal Ass'n*, 81 F.3d at 1082. The Eleventh Circuit's analysis is somewhat perplexing, because it acknowledges that "reimburse" means "to pay back" "*an equivalent* for something expended" (emphasis added), and yet the opinion concludes that "reimbursement" is not restricted "dollar-for-dollar [to] what the reimbursed party payed out." If anything, the Eleventh Circuit's opinion seems to confirm the statute's ambiguity.

In any event, we need not ponder how this case might be decided under *Chevron* until we first decide whether *Chevron* deference even applies. If we could resolve this case on the plain meaning of the statute, we would be obliged to do so. *See Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is.the law and must be given effect.") (citations omitted). We can discern no plain meaning in this case, however.

The District Court accepted the proposition that the statute was ambiguous under *Chevron's* first step, *see* Mem. Op. at 7-8, *reprinted in* J.A. at 208-09, but reasoned that the agency's revised interpretation was not entitled to deference under *Chevron's* second step, because the interpretation was adopted pursuant to the Eleventh Circuit order, *see id.* at 10-11, *reprinted in* J.A. at 211-12. It then appeared to "defer" to the agency's erstwhile, pre-Eleventh Circuit interpretation, finding it to be reasonable. *See id.* at 12, *reprinted in* J.A. at 213. The court's seeming "deference" to an interpretation that was not even in force was incorrect, and amounted to a substitution of the court's own judgment for the agency's current interpretation.

The District Court's error was understandable in light of the mixed messages from the agency as to which interpretation of the statute the agency really holds. The agency implemented the Eleventh Circuit's interpretation nationwide, but still seemingly believes that the Eleventh Circuit "misconstrued the Coal Act." *See* Reply Br. for Appellant Commissioner at 1. On the one hand, the agency claims that the Eleventh Circuit injunction "compelled" it to adopt the current interpretation of "reimbursements." In this vein, the Commissioner expresses "entire agreement" with the District Court's interpretation. *See* Br. for Appellant Commissioner at 21. On the other hand, the agency claims that it was not bound to apply the Eleventh Circuit's interpretation nationwide, but voluntarily chose to do so out of a reasonable interest in uniform administration, fairness, and practicality. *See* Br. for Appellant Commissioner at 10. It is unclear which view of the statute the agency holds. Was the agency compelled to adopt an interpretation that it did not prefer, or did it acquiesce voluntarily and

reasonably in an interpretation that it thought reasonable?

This court cannot properly engage in *Chevron's* second step analysis until we first determine whether this case is in the class of cases to which *Chevron* deference can apply. *Chevron* deference would only apply if the agency's adoption of the Eleventh Circuit's view of "reimbursements" represented the agency's own reasoned judgment on the meaning of the statute. *See Arizona v. Thompson,* 281 F.3d 248, 254 (D.C.Cir.2002) ("Deference to an agency's statutory interpretation 'is only appropriate when the agency has exercised its *own* judgment'....") (quoting *Phillips Petroleum Co. v. FERC,* 792 F.2d 1165, 1169 (D.C.Cir.1986)); *Transitional Hosps. Corp. of Louisiana, Inc. v. Shalala,* 222 F.3d 1019, 1029 (D.C.Cir.2000). If the agency voluntarily and reasonably "acquiesced" in the Eleventh Circuit's interpretation in extending it to apply beyond those coal companies who were party to the litigation, then the agency may be deemed to have exercised its reasoned judgment. But if the agency applied the Eleventh Circuit's interpretation nationwide because it believed that it had no choice and that it was effectively "coerced" to do so, then the agency cannot be deemed to have exercised its reasoned judgment. *Chevron* deference to the agency's interpretation would only be appropriate if the interpretation of "reimbursements" currently in force indeed represents the agency's own reasoned interpretation.

An agency's "coerced" adoption of an interpretation does not reflect the agency's choices within its delegated authority to interpret a statute. Such an interpretation would deserve no deference from this court, since, in this case, this court's deference would amount to deference to the Eleventh Circuit, not to the Commissioner. But if the agency voluntarily and reason-

ably "acquiesced" in the Eleventh Circuit's interpretation, taking into account the existence of the judgment, and reasoning that the interpretation was a permissible or reasonable one, then the agency may be entitled to deference under *Chevron* Step Two. To determine whether this case is in the arena of *Chevron,* we must determine which of these two scenarios correctly characterizes the agency's action when the agency applied the interpretation nationwide.

We are impeded in this determination by the agency's inconsistent, possibly self-contradictory characterization of its own reasoning regarding its application of the Eleventh Circuit's interpretation to coal companies not before the Eleventh Circuit. In the Government's brief to this court, agency counsel states that "the nationwide application of *National Coal* resulted, not from overreaching by the [Eleventh Circuit], but from the Commissioner's decision to 'acquiesce' ... and to apply the judgment nationwide." Br. for Appellant Commissioner at 32-33. Counsel thus argues that "eminently rational" considerations "of fairness to all Coal Act payers, the high proportion of payers who could already claim the benefit of the *National Coal* judgment, and the strong interest in consistent and uniform administration of a national statute" informed the Commissioner's decision to apply the revised interpretation to all Coal Act payers. *Id.* at 33; *see also id.* at 10. Counsel's arguments suggest voluntary acquiescence by the agency.

However, we hasten to add that mere assertion by counsel of voluntary acquiescence, unaccompanied by an actual exercise of reasoned judgment by the Commissioner, would not suffice to entitle the agency to *Chevron* deference. In a closely analogous case in the Seventh Circuit, *Atchison, Topeka & Santa Fe Ry. Co. v.*

*Pena,* 44 F.3d 437, 442-43 (7th Cir.1994) (en banc), *aff'd, Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.,* 516 U.S. 152, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996), the court declined to give *Chevron* deference to an agency's decision to put an interpretation, which was ordered by the Ninth Circuit, into force nationwide. Judge Easterbrook's concurrence noted that the agency's preference for a uniform administration of a statute is "a position on sound administration" and may be wise, but is not the type of decision that deserves deference. *See Atchison,* 44 F.3d at 446-47 (Easterbrook, J., concurring). We agree, in the sense that such a decision may plausibly be reasonable in itself, but in a case involving the meaning of a statutory term that the agency has delegated authority to interpret, the agency must evince reasonableness as to the meaning of the statute to deserve deference. *Chevron* deference is only appropriate where the agency's action represents its *reasoned judgment about the meaning of the statute.* Even where the agency voluntarily acquiesced in adopting the revised interpretation, if the only considerations that constituted its reasoning in that decision were administrative concerns, such as the desirability of uniformity and the high proportion of payers already covered by the injunction, then *Chevron* deference is not appropriate.

We need not decide whether counsel's arguments on behalf of the Commissioner in this litigation constitute an "agency position" to which deference might be due under *Chevron. See United Seniors Ass'n v. Shalala,* 182 F.3d 965, 971 (D.C.Cir. 1999) ("Even if the legal briefs contained the first expression of the agency's views, under the appropriate circumstances we would still accord them deference so long as they represented the agency's 'fair and considered judgment on the matter.'") (quoting *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 911-12, 137 L.Ed.2d 79

(1997)); *Nat'l Wildlife Fed'n v. Browner,* 127 F.3d 1126, 1129 (D.C.Cir.1997) ("The mere fact that an agency offers its interpretation in the course of litigation does not automatically preclude deference to the agency."). In this case, the agency's legal brief itself contains mixed expressions of the agency's views. There is no "deference" to be given in a situation such as this.

It is unclear from counsel's explication of agency acquiescence whether the Commissioner's decision to apply the new interpretation nationwide was informed by considerations of statutory meaning, such as a belief that the revised interpretation was a permissible one. The agency has stated neither that it purported to interpret the Coal Act when it implemented the revised interpretation nationwide, nor that it believes the interpretation currently in force to be a permissible one. Therefore, we have no way of determining whether the agency engaged in reasoned, voluntary acquiescence.

As if to underscore this uncertainty, the record contains some evidence that agency officials may have believed that they had no choice but to adopt the revised interpretation. In its opposition to the Trustees' motion for summary judgment below, the Commissioner stated: "Disagreement by the Commissioner ... with the legal rationale of the Alabama district court does not ... afford the Commissioner license to ignore the court's equitable decree." Federal Defendant's Response to Plaintiff Trustees' Motion for Summary Judgment, at 28, *reprinted in* J.A. at 191. The letter from the Department of Health and Human Services ("DHHS"), informing the Trustees of the recalculation after the Alabama district court's injunction, states simply that the premium "was determined in accordance with the decision of the United States District Court for the

Northern District of Alabama in *National Coal Association v. Shalala.*" Letter from Harry C. Ballantyne, Chief Actuary, DHHS, to Michael H. Holland, Chairman of the Board of Trustees ¶ 1 (Sept. 13, 1995), *reprinted in* J.A. at 109. The Commissioner's brief speaks simply of "an agency's duty to follow orders issued against it in other litigation." Br. for Appellant Commissioner at 22-23. Indeed, the agency's core arguments in this appeal, that its action must be deemed to be "in accordance with law" because it was "compelled" by a prior judicial decree, and that it is currently "whipsawed" between two irreconcilably conflicting decrees, bespeak the agency's belief that it was compelled to adopt the Eleventh Circuit's interpretation nationwide. In any event, it is clear that the agency's view of the correct interpretation of the statute differs from the one currently in effect, *see* Br. for Appellant Commissioner at 1 ("[W]e believe the National Coal court misconstrued the Coal Act. . . ."), but it is unclear whether the agency believes the current interpretation to be a reasonable one.

In short, we cannot now determine whether the agency voluntarily acquiesced in the Eleventh Circuit's interpretation, believing it to be a reasonable interpretation, or rather believed that it had no choice but to apply the revised interpretation nationwide. The record suggests no clear answer to this question. Because we cannot resolve this matter on the instant record, the case will be remanded to the agency for clarification of its position on this question.

### III. CONCLUSION

For the reasons given above, we affirm the District Court's denial of the motion to dismiss. We vacate the District Court's injunction insofar as it purports to bind the Commissioner with respect to coal companies who had the benefit of the Eleventh Circuit judgment. We vacate the agency's nationwide implementation of the Eleventh Circuit's interpretation, because the nationwide implementation has yet to be appropriately justified by the agency. We reverse the District Court's judgment upholding the Commissioner's original interpretation of the statute, for this matter must be addressed by the agency in the first instance. We remand the case to the District Court with specific instructions to remand the case to the agency for further consideration of the matter in light of this opinion.

*So ordered.*