Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 14, 2003          Decided November 21, 2003

No. 02-5311

FELIX S. BLOCH,
APPELLANT

v.

COLIN L. POWELL, SECRETARY OF STATE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 98cv00301)

*Michael J. Kator* argued the cause for appellant. With him on the briefs was *William S. Aramony*.

*William G. Kanter*, Deputy Director, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Katherine S. Dawson*, Attorney, U.S. Department of Justice.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: HENDERSON, TATEL, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Appellant Felix S. Bloch was a member of the Senior Foreign Service when he resigned in 1990, after the Department of State initiated proceedings to remove him from the Service on national security grounds. In 1992, the Department notified Bloch that the Secretary of State had decided to withhold consent to Bloch's receipt of an immediate retirement annuity. Bloch then withdrew the compulsory retirement contributions he had made to the Foreign Service Retirement System. Bloch argues that the Secretary lacked discretion to withhold the immediate annuity, and that the denial of an immediate annuity constituted a deprivation of property without due process of law. Bloch also contends that his withdrawal of retirement contributions cannot be construed as a waiver of his right to a *deferred* annuity, because the Department did not inform him at that time that a deferred annuity was an available option. The Foreign Service Grievance Board held that the Secretary had the discretion to withhold the immediate annuity, that such action did not violate due process, and that Bloch had waived the deferred annuity when he elected the lump-sum withdrawal. The district court found that the Board's decision was not arbitrary or capricious. We affirm.

## I.

Bloch, who joined the Foreign Service in 1958, was suspended without pay in February 1990 when the Federal Bureau of Investigation provided the Department of State with information indicating that his continued employment might not be consistent with national security. In a letter to Bloch, the Assistant Secretary of State for Diplomatic Security explained that Bloch, while serving overseas, had transferred national security information to an unauthorized individual, had undertaken counter-surveillance measures when traveling to meet with the individual, and had given false information to FBI agents conducting a national security investigation. Letter from Sheldon J. Krys to Felix S. Bloch

(Feb. 7, 1990), at 1–2 (JA 171, SA 171a). No criminal charges were brought against Bloch, but the Department initiated a removal proceeding under 5 U.S.C. § 7532. That statute provides that the head of a federal agency may suspend an employee without pay "when he considers that action necessary in the interests of national security," *id.* § 7532(a), and may subsequently remove the employee after providing notice and an opportunity to respond (including a hearing, at the request of the employee) if the agency head "determines that removal is necessary or advisable in the interests of national security." *Id.* § 7532(b); *see also id.* § 7532(c).

Bloch requested the hearing to which he was entitled under the statute, but on July 3, 1990 — one week before the scheduled hearing date — Bloch tendered a letter of resignation to the Secretary. On the same day, Bloch withdrew his request for a hearing and submitted an application for voluntary retirement, including a request for payment of an immediate retirement annuity. On July 18, the Department notified him by letter that his offer to resign had been taken under advisement pending review by the Secretary. On November 5, the Department wrote to Bloch to inform him that the Secretary had determined that it was necessary and advisable to remove Bloch in the interests of national security, and that his removal from the Foreign Service would be effective that day.

By the summer of 1991, the Department had not yet responded to Bloch's application for an immediate annuity, and he renewed his request. In a letter dated April 2, 1992, the Department notified Bloch that the Secretary had "decided to withhold consent to [his] voluntary retirement and receipt of an immediate annuity." Letter from John F.W. Rogers, Under Secretary of State for Management, to Felix S. Bloch (Apr. 2, 1992), at 1 (JA 157). As authority for the Secretary's right to withhold consent, the letter cited Section 811 of the Foreign Service Act of 1980 (codified as amended at 22 U.S.C. § 4051), which provides:

> Any participant who is at least 50 years of age and has 20 years of creditable service, including at least 5 years of

service credit toward retirement under the [Foreign Service Retirement] System (excluding military and naval service), may on his or her own application and with the consent of the Secretary be retired from the Service and receive retirement benefits . . . .

The Department indicated two reasons for withholding consent in Bloch's case: that his removal from the Foreign Service in November 1990 was an involuntary separation (rather than a voluntary retirement under Section 811) and that the "serious national security reasons underlying" his removal "furnish[ed] sufficient ground to withhold consent." Letter from John F.W. Rogers, *supra*, at 1 (JA 157). The letter also stated that "persons separated from the service without benefit of an annuity are entitled to receive a refund of contributions made to the retirement system during the period of employment," and indicated that Department staff would contact Bloch about completing the paperwork needed to receive the refund. *Id.*

On August 7, 1992, Bloch applied for the refund of his retirement contributions; in October of that year he received a lump sum of approximately $76,000. Some two and a half years later, in March 1995, he initiated a grievance with the Department alleging that the Secretary's April 1992 decision to withhold consent to his retirement and immediate annuity was arbitrary and capricious, violated pertinent statutory provisions, and contradicted a 1983 decision of the Foreign Service Grievance Board (FSGB). The Department rejected his grievance on February 20, 1996, holding that "there is nothing in Section 811 which would suggest that removal on national security grounds could not serve as a basis for the withholding of the consent of the Secretary." Letter from Ruth A. Whiteside, Deputy Assistant Secretary for Personnel, U.S. Department of State, to Herbert R. Rubenstein, Counsel for Felix Bloch (Feb. 20, 1996), at 3 (JA 108). The letter referenced and attached the April 2, 1992 letter to Bloch from Under Secretary Rogers, explaining the bases for the Secretary's decision to withhold consent. *Id.* at 3–4 (JA 108–09).

Having thus disposed of the question of Bloch's entitlement to an immediate annuity, the Department's letter went on to address whether he was entitled to a "discontinued service" annuity pursuant to Section 810 of the Act (codified at 22 U.S.C. § 4050). Section 810 provides that any Foreign Service member who "voluntarily separates" from the Service after at least 5 years of service credit can withdraw his contributions to the pension fund or leave them in place and receive an annuity beginning at age 60. Unlike Section 811, Section 810 does not require the consent of the Secretary for the disbursement of an annuity at age 60 (often a *deferred* annuity, as it would have been for Bloch, who was 54 years old when he left the Foreign Service). The Department concluded that Bloch was not entitled to a Section 810 annuity because he had waived his right to it when he withdrew his contributions in August 1992. As the Department emphasized, the form that Bloch submitted to request his refund included a prominent section entitled "NOTICE TO APPLICANT" stating that "[i]f you have five or more years of Federal civilian service you may be entitled to an annuity which will be forfeited by payment of this refund." Application for Refund of Compulsory Retirement Contributions (Aug. 7, 1992) (JA 141). Even in the absence of such a waiver, the Department noted, Bloch would not be entitled to a deferred annuity under Section 810 because the statute applied only to voluntary separations, and his separation in November 1990 was involuntary.

Bloch then filed a grievance with the FSGB. He relied principally on the Board's decision in a redacted (and thus untitled) 1983 case, No. G–083–054–AID–11 (FSGB 83–54), which interpreted a Department regulation contained in 3 Foreign Affairs Manual (FAM) § 763.6. The regulation governs "separation for cause" (defined as "separation from the Service because of the unsatisfactory performance of duties or for such other cause as will promote the efficiency of the Service," *id.* § 761.2(i)), and states that "[a]n employee is free to resign or retire at any time on a mutually agreed effective date, and to have the employee's reasons for resigning or retiring entered" on the employee's personnel record. *Id.*

§ 763.6(a). In FSGB 83–54, the Board considered the interplay between 3 FAM § 763.6 and the requirement in Section 811 that the Secretary consent to voluntary retirements. The case involved an employee who had sought to retire after removal proceedings had been initiated pursuant to Section 610 of the Act (codified as amended at 22 U.S.C. § 4010), a general separation-for-cause provision that establishes procedures for separating employees "for such cause as will promote the efficiency of the Service." *Id.* § 4010(a)(1). In FSGB 83–54, the Board determined that "[i]t is not necessary . . . to decide in this case whether the *statute* [Section 811] imposes any limits on the agencies' power to grant or withhold consent to early retirement," because "the agencies, by regulation, have imposed such limitations on themselves." FSGB 83–54 at 6–7 (citing 3 FAM § 763.6) (JA 150–51). The Board concluded that, given the Section 763.6 regulation, the employee could resign even without the Secretary's consent, and even though removal proceedings were pending against him under Section 610. *Id.* at 7 (JA 151).

Bloch argued that because the Board had concluded that "an employee will be permitted to resign in the face of a proposed separation for cause," *id.*, the Secretary had no authority to withhold consent to Bloch's retirement or his receipt of an immediate annuity. As for the *deferred* annuity, Bloch argued that his application for the refund of his contributions could not be read as a waiver of his right to such an annuity, because he did not know that there was any right to waive: he applied for the refund after assuming (based on the fact that the April 1992 letter described him as an employee "separated from the service without benefit of an annuity," *see* Letter from John F.W. Rogers, *supra*, at 1 (JA 157)) that he was not entitled to *any* annuity.

The FSGB denied Bloch's grievance. As an initial matter, the FSGB held that Bloch's resignation was effective on the day it was tendered (July 3, 1990) and that his separation from the Service occurred on that day, rather than in November 1990 when the Department purported to remove him from the Service. *In re Bloch*, FSGB Case No. 96–019 (Jan. 15, 1997), at 8–9 (JA 49–50) (Initial Board Decision). Such a

result, the Board stated, was compelled by 3 FAM § 751.1, which provides that "[a]n employee is free to resign at any time and to propose the effective date of resignation." *Id.* In a brief footnote, the Board described FSGB 83–54 as holding that an employee can resign even when removal proceedings are in progress. Initial Board Decision at 8–9 n.6 (JA 49–50). The Board added, however, that resignation "does not trigger entitlement to an annuity." *Id.* at 9 (JA 50). But the Board opted not to define the scope of the Secretary's authority to withhold consent to the annuity under Section 811 of the Act, reasoning that "[s]uch a definition would have profound implications." *Id.* at 11 (JA 52). Instead, it focused on whether Bloch had waived his right to an annuity. The Board first noted that the form Bloch used when he applied for the refund of his retirement contributions "gave him clear notice that a refund would forfeit any entitlement to an annuity" and "expressed no limitation on the type of annuity being waived." *Id.* at 12, 13 (JA 53, 54). Moreover, the Board observed that Bloch was "an experienced, very senior officer" who was presumably able to make informed and competent choices. *Id.* at 13 (JA 54). It also pointed out that even during the two months between applying for the funds and receiving the refund check, Bloch could have changed course and filed a grievance, but did not. *Id.* The Board concluded that Bloch's "waiver and forfeiture of any entitlement to an annuity was unambiguous, valid, and binding." *Id.*

Bloch sought review of the Board's decision in the District Court for the District of Columbia, *see* 22 U.S.C. § 4140, arguing that the FSGB had erred in failing to consider the question whether the Secretary had discretion to withhold consent to the immediate annuity. He pointed out that if he were eligible to receive an immediate annuity when he applied for the refund, then Section 815(a)(1)(D) of the Act (codified as amended at 22 U.S.C. § 4055(a)(1)(D)) — which bars such refunds if the recipient becomes eligible for an annuity within 31 days of filing the refund application — raised a legal bar to the disbursement of the refund. Under such circumstances, the refund (and thus, he argued, his

waiver of any entitlement to an annuity) would have been unlawful and therefore invalid. The district court did not reach the merits of this argument, but held that it was "an argument that the Board should have addressed before reaching its conclusion that Mr. Bloch's waiver was valid and binding," *Bloch v. Albright*, 43 F. Supp. 2d 17, 21 (D.D.C. 1999), and thus remanded to the Board.

On remand, the Board resolved the issue that it had left open in Bloch's first grievance: the scope of the Secretary's authority under Section 811 of the Act. The Board concluded that "the plain language of...section 811 confers broad discretionary authority upon the Secretary of State to grant or withhold consent to the benefits available under that section." *In re Bloch*, FSGB Case No. 99–026 (Mar. 30, 2000), at 23 (JA 316) (Decision on Remand). It then examined the two reasons for withholding consent that the Department had listed in its April 1992 letter to Bloch: the fact that he had been removed from the Service involuntarily in November 1990, and the fact that his removal was based on national security concerns. The Board concluded that the first reason was insufficient to warrant withholding consent to Bloch's retirement and annuity, because (as the Board had found in its previous ruling) Bloch's separation from the Service occurred immediately upon his resignation in July 1990. *Id.* at 20, 25 (JA 313, 318). But the second reason was sufficient, in the Board's view: "[T]he serious national security concerns...which prompted the filing of charges against Bloch...constitute legitimate and rational grounds to support and justify the Secretary's withholding of consent to an immediate annuity." *Id.* at 25 (JA 318).

This holding defeated Bloch's Section 815 argument: because the Secretary had validly denied an immediate annuity for Bloch, he was not eligible to receive an annuity within 31 days of when he applied for his refund, so the refund was not in violation of Section 815. *Id.* at 30–31 (JA 323–24). The Board noted, however, that Bloch had remained entitled to a *deferred* annuity under Section 810 of the Act, even after the Secretary had withheld consent to the immediate annuity. *Id.* at 25 (citing 3 FAM § 672.4) (JA 318); *see also id.* at 29

(JA 322) ("The Department's regulations make it clear that a withholding of Secretarial consent to voluntary retirement status with a consequential immediate annuity does not extinguish a right to a deferred annuity under section 810."). The Board then restated its earlier conclusion that Bloch had waived his right to this deferred annuity: "by submitting [the refund application] with its clear warning language, together with the receipt of his mandatory contributions, Bloch forfeited any entitlement to an annuity." *Id.* at 27 (JA 320). The Board finally discussed the argument that the Secretary's decision deprived Bloch of property without due process of law; that argument failed, concluded the Board, because the discretion accorded the Secretary in Section 811 precluded the creation of a constitutionally protected property right to an immediate annuity. *Id.* at 29 (JA 322).

Bloch again sought review in the district court, which entered summary judgment in favor of the Department. *Bloch v. Powell*, 227 F. Supp. 2d 25, 38 (D.D.C. 2002) ("[A]ccording due deference to the FSGB, this court determines that the FSGB's decision is not arbitrary or capricious and that the [Department] did not deny [Bloch]'s right to due process."). This appeal followed. We review the FSGB decision directly, "according no particular deference" to the district court's judgment. *Holland v. National Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002).

## II.

### A.   The Secretary's Discretion to Withhold Consent

The crux of Bloch's argument is that the Secretary did not have the discretion to withhold consent to Bloch's receipt of an immediate annuity. Bloch concedes that Section 811 of the Act vests the Secretary with significant discretion — as indeed he must. The statute is perhaps a paradigmatic vesting of unfettered discretion, placing no constraints on the Secretary's authority to withhold consent (other than to *require* that consent be withheld if an employee has served fewer than five years, *see* 22 U.S.C. § 4051). But Bloch

argues that the Department's regulations and its decision in FSGB 83–54 have cabined the Secretary's discretion.

As to the regulations, Bloch argues that 3 FAM §§ 751.1 ("An employee is free to resign at any time and to propose the effective date of resignation.") and 763.6(a) ("An employee is free to resign or retire at any time on a mutually agreed effective date") limit the discretion of the Secretary to setting a date for retirement, and eliminate any authority to withhold an immediate annuity. The first provision concerns only resignation, not retirement, and there is no longer any dispute that Bloch's resignation was effective despite the absence of Secretarial consent. As for the second provision, the Department correctly explains that it cannot be read to establish a right to retire "at any time" without regard to the specific requirements for retirement detailed in applicable statutes and regulations — age, length of service, and so on. Indeed, the provisions spelling out those requirements note that participants who meet the requirements for age and length of service "may be retired on application and *with the consent of the participant's agency* from the Service with entitlement to an immediate annuity." 3 FAM § 672.1–1(a) (emphasis added). The FSGB considered these arguments in the Decision on Remand and ruled in favor of the Secretary, noting the admonition in 3 FAM § 672.1–1b that Foreign Service members planning to retire should "request the approval" of appropriate personnel officers. *See* Decision on Remand at 24 (JA 317).

Bloch next argues that the Secretary's discretion was cabined by the Board's decision in FSGB 83–54 and that the Board's Decision on Remand in this case is an unexplained departure from FSGB 83–54 and therefore arbitrary and capricious, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A); *see also Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970). The Board was certainly aware of FSGB 83–54 in its Decision on Remand, relying on FSGB 83–54 to reiterate the conclusion in the Initial Board Decision that the Department could not reject Bloch's resignation simply because it was seeking to separate him under 5 U.S.C. § 7532. Decision on Remand at

20 n.2 (JA 313). The fact that removal proceedings were pending for national security reasons under 5 U.S.C. § 7532 rather than under the general "efficiency of the Service" rubric of Section 610, as in FSGB 83–54, made no difference, and it is indeed hard to imagine how the addition of national security concerns could make the arguments in favor of involuntary *retention* of the employee any more compelling than they were in FSGB 83–54.

The right to an *immediate annuity* was — in the Board's view — a separate issue, because "merely leaving the rolls through a resignation does not trigger eligibility and entitlement to an annuity." *Id.* at 20 (JA 313). As to this latter issue, the Board concluded that the plain language of Section 811 of the Act confers broad discretion on the Secretary to withhold consent to immediate annuities. *Id.* at 23 (JA 316). In Bloch's case, the Board found, "the serious national security concerns harbored by his agency and which prompted the filing of charges against Bloch — charges which he chose not to contest — constitute[d] legitimate and rational grounds" for the Secretary to deny an immediate annuity. *Id.* at 25 (JA 318). Those concerns were not present in FSGB 83–54.

Our review under the arbitrary-and-capricious standard is narrow; we will "uphold an agency decision 'of less than ideal clarity if the agency's path may reasonably be discerned.'" *Common Cause v. Federal Election Comm'n*, 906 F.2d 705, 706 (D.C. Cir. 1990) (per curiam) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys.*, 419 U.S. 281, 286 (1974)). The Board's reasoning on the issue of the Secretary's discretion to withhold consent is more than sufficient to satisfy this test; the Board adequately articulated the respects in which it found the precedent in FSGB 83–54 controlling and the respects in which it found the instant case different from FSGB 83–54. The Board's Decision on Remand was thus not arbitrary or capricious.

## B. Due Process

Bloch also presses the argument that the Secretary has deprived him of property without due process of law. To prevail, Bloch must first show that the interest he asserts is a

constitutionally protected property interest. *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985)). The Supreme Court's formulation in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), instructs that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." The Court elaborated that property interests are created and circumscribed "by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

Bloch argues that his interest in an immediate annuity upon retirement from the Foreign Service is a protected property interest. In his view, the Foreign Service Act, the Department's regulations implementing the Act, and the Department's conduct in prior cases combine to provide the basis for a legitimate claim of entitlement to an immediate annuity. As to the Act itself, Bloch relies primarily on Congress's stated desire to maintain conformity between the Civil Service Retirement and Disability System and the Foreign Service Retirement and Disability System. *See* 22 U.S.C. § 4067(a) (providing that laws that apply to the civil service retirement system should generally be extended to the foreign service retirement system). Given the parallel nature of the two systems, Bloch argues, cases such as *American Postal Workers Union, AFL–CIO v. United States Postal Serv.*, 707 F.2d 548, 554 (D.C. Cir. 1983) — which held that a protected interest in retirement benefits arises when an employee separates from the federal civil service — support his claim that he had a protected interest in an immediate annuity. He concedes that the statutes governing civil service retirements do not contain language analogous to the phrase "with the consent of the Secretary" in Section 811 of the Foreign Service Act, but argues that those six words

cannot have the drastic consequence of negating a Foreign Service employee's property interest in an annuity.

Turning to the Department's regulations, Bloch cites this court's observation in *Kizas v. Webster*, 707 F.2d 524, 539 (D.C. Cir. 1983), that in the context of federal employment, regulations can create protected property interests. As for the Department's practices, Bloch emphasizes FSGB 83–54 and the Department's own admission that no employee other than Bloch had ever been denied a pension in the face of separation proceedings. *See* Letter from Joanne M. Lishman, Director, Grievance Staff, U.S. Department of State, to Herbert R. Rubenstein, Counsel for Felix Bloch (June 20, 1996), at 1 (JA 74). Given that this court has held that "[i]t is possible…for a legitimate expectation to arise based upon the consistent practice of a decisional body — even in the absence of express regulatory language," *Tarpeh-Doe v. United States*, 904 F.2d 719, 724 (D.C. Cir. 1990), Bloch argues that the Department's practices buttress his claim of entitlement to an immediate annuity.

Bloch's argument runs headlong, however, into a line of precedent holding that when a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise. In *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997), this court held that when "the legislature leaves final determination of which eligible individuals receive benefits to the 'unfettered discretion' of administrators, no constitutionally protected property interest exists" (quoting *Roth*, 408 U.S. at 567). *See also Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001) (federal employee had no protected interest in receiving a waiver of a mandatory retirement rule because Congress had granted broad discretion to the Secretary of Transportation to make decisions about such waivers); *cf. Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir. 1981) (Breyer, J.) (noting that *Roth* and its progeny "provide no perfect touchstone for identifying 'property'" but at least "suggest that the more circumscribed is the government's discretion…to withhold a benefit, the more likely that benefit constitutes 'property'").

As we concluded in part II.A above, the Department's regulations and the Board's decision in FSGB 83–54 did not cabin the Secretary's statutorily unbounded discretion to withhold consent to an immediate annuity when national security concerns prompt an employee's separation from the Service. To create a protected property interest, regulations must limit discretion by " 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989); *see also Tarpeh–Doe*, 904 F.2d at 722–23. The Department's regulations do not do so.

Bloch's heavy reliance on *Garrott v. United States*, 340 F.2d 615 (Ct. Cl. 1965) (en banc), is misplaced. He extracts from *Garrott* the principle that "irrespective of whether the interest is characterized as a 'right,' *i.e.*, property, or a 'privilege,' *i.e.*, subject to the discretion of the Secretary," due process is required before the government can act against an individual's substantial interests on loyalty or security grounds. Reply Br. at 10. This principle is starkly at odds with post-*Garrott* Supreme Court cases such as *Roth* and *Thompson*, which make discretion the touchstone of the due process analysis in the property context. Moreover, *Garrott* and the cases on which it relies (such as *Greene v. McElroy*, 360 U.S. 474 (1959)) involved situations in which an employee was not given a meaningful opportunity to respond to the underlying allegations of national security violations; here, by contrast, Bloch had the right to a hearing under Section 7532 but chose to waive that right.

The Secretary's broad discretion to withhold consent to retirement and an immediate annuity negates the existence of any constitutionally cognizable property interest in Bloch, and so his due process claim must be rejected. We emphasize that our holding today does not mean, as Bloch has argued, that employees of the Foreign Service have no property interest in their retirement annuities. This case requires us to determine only whether an employee has a protected interest in an *immediate* annuity under Section 811 upon resignation from the Service; the question whether employ-

ees have such an interest in a deferred annuity is not before the court. In fact, the Department concedes that Bloch would have been entitled to the deferred annuity had he not withdrawn his contributions, and the statutory and regulatory scheme indicates that the Secretary has no discretion with respect to deferred annuities. *See* 22 U.S.C. § 4050 (defining eligibility for deferred annuities without reference to any requirement of obtaining consent of the Secretary); 3 FAM § 672.4 (stating that any participant who is not eligible for an immediate annuity and who meets length-of-service requirements can elect a deferred annuity, with no reference to consent); *id.* § 672.5–1(b) (same).[1]

## C. Waiver of the Deferred Annuity

Bloch's last argument is another APA claim: that the FSGB acted arbitrarily and capriciously when it held that his withdrawal of his compulsory retirement contributions in 1992 was a waiver of his right to receive a deferred annuity under Section 810 of the Act. This court's review is again highly deferential; we are "not to substitute [our] judgment for that of the agency" but must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Southern Co. Servs., Inc., v. FCC*, 313 F.3d 574, 579–80 (D.C. Cir. 2002) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

---

[1] The distinction between immediate and deferred annuities demonstrates the weakness of another of Bloch's statutory arguments. He emphasizes that in Section 610 of the Act, Congress provided that most employees who are separated for cause can elect an annuity beginning at age 60 and established specific procedures that must precede any separation for cause, creating a protected entitlement to such an annuity. According to Bloch, it would be "perverse" to hold that employees who are separated for cause under Section 610(b) have a property right in their annuities while "all other Foreign Service employees" lack any property right in their annuities. Appellant's Br. at 17. It is clear, however, that any property right created under Section 610(b) is a right to a deferred annuity, not a right to an immediate annuity.

In this appeal, Bloch has not renewed the argument that prompted the remand from the district court to the FSGB earlier in these proceedings — that because he was eligible for an immediate annuity at the time he applied for his refund, Section 815 of the Act rendered the payment of the lump sum unlawful (and any consequent waiver invalid). Instead, Bloch's principal argument is that his purported waiver was made on the basis of incomplete information. He points to the Department's April 1992 letter, which mentioned that he had the option of applying for a refund of his contributions, but did not mention that he also had a different option — leaving the contributions in place and receiving a deferred annuity when he reached age 60. Bloch also emphasizes that when the Department rejected his first grievance in February 1996 it stated (erroneously, it now concedes) that "there was no inchoate pension right which would ripen on Mr. Bloch's sixtieth birthday." Letter from Ruth A. Whiteside, *supra*, at 5 (JA 110).[2]

The FSGB addressed the waiver issue in both of its decisions in Bloch's case. The Initial Board Decision emphasized that the application form gave Bloch "clear notice that a

_____

[2] At oral argument, counsel for Bloch emphasized the fact that Section 810 of the Act, which governs eligibility for deferred annuities, applies only to retirees who separate from the Service voluntarily. Bloch could not have known that he was eligible for a deferred annuity when he applied for the refund of his retirement contributions, counsel argued, because the Department's April 2, 1992 letter had made clear that the Department considered his separation to be involuntary. (Only later, after the FSGB's first decision held that the Secretary had no right to refuse Bloch's resignation, was it certain that Bloch's separation should be treated as voluntary.) We cannot consider this argument because it was not raised during the FSGB's proceedings on remand from the district court. *See Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105, 1108 (D.C. Cir. 2001). In any event, Bloch's consistent position from the outset was that his separation had in fact been voluntary. *See, e.g.*, Application for Retirement (July 3, 1990) (JA 163); Grievance of Felix Bloch to the FSGB (Apr. 17, 1996), at 10–11 (JA 94–95). He should not have ignored the consequences of being right.

refund would forfeit any entitlement to an annuity;" the FSGB also observed that Bloch was an experienced officer and that he had time, even after applying for the refund, to change his mind and file a grievance to challenge the denial of the immediate annuity. Initial Board Decision at 12, 13 (JA 53, 54). Bloch's decision to waive the annuity, the Board concluded, was "informed" and "intentional." *Id.* at 13 (JA 54).

In the Decision on Remand, the Board found that the form Bloch used to apply for the refund contained "readily observable language" warning him that payment of the refund would forfeit any annuity to which he may have been entitled. Decision on Remand at 27 (JA 320). The Board also cited 3 FAM § 672.5 (entitled "Separation Without Annuity"), which provides that "[a]ny participant who is separated from the Service with at least 5 years of creditable service…may elect to receive a lump-sum payment…or to [leave] the contributions in the Fund and received a deferred annuity." 3 FAM § 672.5–1(b). As the FSGB further noted, the regulation then provides that "[a]n election to receive a lump-sum payment cannot be changed once it becomes final." *Id.* Moreover, the misstatements in the February 1996 letter could not have formed the basis of Bloch's decision to withdraw his retirement contributions in 1992, and thus are irrelevant in deciding whether Bloch waived the deferred annuity at that time.

We cannot say that the Board failed to consider the relevant factors or made a clear error of judgment when it concluded that Bloch had waived his right to a discontinued service annuity; its decision thus was not a violation of the APA.

### III.

For the foregoing reasons, we affirm the judgment of the district court.